[Civ. No. 6923.   Third Dist.   Dec. 9, 1943.]

OTTO HARRY HERBERT, Appellant, v. P. L. CASSI-NELLI et al., Defendants; GEORGE SAUSMON, Respondent.

Frank E. Kilpatrick and Henry & Bedeau for Appellant.

Van Dyke & Harris for Respondent.

PEEK, J.—This is an appeal by plaintiff from a judgment in favor of the defendant Sausmon. The action was one for personal injuries arising out of a collision between a car operated by plaintiff and one owned by said defendant but driven by the defendant Morris.

At the outset of the trial the action was dismissed as to the defendant Cassinelli; service of process on the defendant Morris could not be made within the State of California, and the action proceeded against Sausmon alone.

The evidence discloses that one Smith had his car stolen and wrecked and was in need of another car; that he talked with the defendant Sausmon, who operated a garage, and as an outgrowth of such conversation borrowed a Chevrolet pickup from him. According to Sausmon's testimony the pickup was given to Smith for his personal use to try out with the thought of selling the vehicle to him. Smith testified to the same effect and added that the pickup was for his personal use and also for transporting personal supplies to and from the sawmill here he worked; that if the car proved satisfactory he would buy it. The record discloses no specific instructions by Sausmon limiting the use of the car by Smith. Sausmon's testimony that ". . . I gave it to him to use personally . . . I never gave him the car with the intention of anybody else using it," creates nothing more than an inference that there existed an assumption of personal use by Smith only. No greater weight can be attached thereto.

The court found that the accident was due solely to the negligent operation of the car by Morris, and that plaintiff's operation of his car contributed in no way to the accident. The court further found that the defendant Sausmon did not know of the operation of the car by Morris, and that such

operation was without either his express or implied permission.

There is no disagreement presented herein concerning the facts surrounding the accident nor the finding of the court in that regard. Therefore, the decision in this appeal must be predicated upon the provisions of section 402 of the Vehicle Code, which provides in part as follows:

"Every owner of a motor vehicle is liable and responsible for the death of or injury to person or property resulting from negligence in the operation of such motor vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner, and the negligence of such person shall be imputed to the owner for all purposes of civil damages."

It is readily apparent from a reading of said section that if the owner Sausmon can be held liable for the damages sustained by the plaintiff, such liability, if any, must find its support in the determination of the sole question of the use and operation being made of the car by Morris at the time of the accident, i. e. whether he was "using or operating" the pickup with the "permission express or implied" of the owner.

The clear and unambiguous language of that section indicates that the Legislature intended to hold an owner liable for the damages or injuries caused by the negligence of anyone who had permission to use or operate the car, whether such permission was "express or implied." The difficulty which has plagued the courts has been in interpreting what is meant by the phrase "with the permission, express or implied, of such owner." In the case of *Bayless* v. *Mull*, 50 Cal.App.2d 66 [122 P.2d 608], the District Court of Appeal reviewed the historical background of that section and observed that as the owner could avoid liability either by refusal to permit another to use his car or by procuring insurance to cover possible liabilities, he therefore should not be permitted to avoid the consequences of the operator's negligence and escape liability by secret restrictions limiting the right to use the motor vehicle. The court therein further stated: "The legislature did not intend by the language it used to permit an owner to show any and all restrictions he may have placed on the use of his car and thus escape liability."

Until the recent cases of *Souza* v. *Corti*, 22 Cal.2d 454 [139 P.2d 645], and *Hobbs* v. *Transport Motor Co.*, 22 Cal. 2d 773 [141 P.2d 738], there has been a decided contrariety of opinion upon the question herein presented.

In the first case the owner of the car loaned it to his son with the instructions: "Don't lend the car to anyone else." The son allowed a friend to drive the car, and while it was being so driven an accident occurred, causing damage to the plaintiff. The trial court found for the owner, but on appeal the judgment was reversed.

The Supreme Court, after carefully reviewing all of the comparable statutory provisions in other jurisdictions, reasoned that the son was "using" the car within the provisions of the act, and stated:

". . . the use which was being made of the borrowed car at the time of the accident was the use which was contemplated by the owner. Any secret restrictions imposed by him on the manner of its use do not negative the controlling fact that it was being used with the owner's permission at the time of the accident. Violations of such restrictions may not be said to cause a revocation of the permission. Liability of the defendant owner in this case pursuant to section 402 of the Vehicle Code is therefore established."

Mr. Justice Schauer in his concurring opinion added the further thought that:

"When the usage which the bailee makes of a borrowed vehicle does not amount to a conversion of it, his mere disobedience of admonitions as to his personal conduct in the operation of the automobile within the scope of the authorized use should not exculpate the owner from the liability imposed by the statute."

In the later case of *Hobbs* v. *Transport Motor Co., supra,* relied upon by respondent, a prospective purchaser was given permission by one of the defendant's salesmen to try out the car with the idea of purchase if his own car could not be properly adjusted. An accident occurred while he was using the borrowed car to test a battery which he had removed from his own car. The District Court of Appeal held that the evidence showed a deviation from the purpose for which the car had been borrowed, and reversed the judgment of the trial court against the owner. It is upon such decision that respondent relies as the latest expression of opinion on the question herein presented. However, the Supreme Court reversed

the District Court of Appeal and affirmed the judgment of the trial court on the ground that the permission to use the car was such as would impose liability on the owner under the imputed negligence rule of section 402 of the Vehicle Code.

The case of *Engstrom* v. *Auburn Automobile Sales Corp.*, 11 Cal.2d 64 [77 P.2d 1059], likewise relied upon by respondent, is not in point, for as stated in the Souza case, *supra*, this case was concerned with violations of restrictions placed upon the borrower as to the purpose for and the time within which the car was to be used.

In the present case Sausmon did not specifically restrict the borrower as did the lender in the Engstrom case, nor did the trial court so find. The lending appears to have been for a general use by the borrower for an indefinite time coupled with an assumption or intendment that only he would use it.

Assuming that Smith violated the restrictions placed upon the use and operation of the pickup by the owner Sausmon in allowing Morris to use it, under the rule in the Souza case, it was nevertheless, the use which was contemplated by the owner with his permission, and a violation of such restrictions could not cause a revocation of such permission.

From the carefully studied memorandum opinion of the trial court, printed in full in respondent's brief, it is apparent that a further case, *Howland* v. *Doyle*, 6 Cal.App.2d 311 [44 P.2d 453], which involved questions very similar to those presented herein, and which was also cited and relied upon by respondent, was of paramount consideration in its determination of the present case. However, since the trial judge filed his opinion, the Supreme Court has handed down its decision in the Souza case, which decision specifically states that if there was anything stated in the Howland case "which is not in harmony with the views expressed herein, it is necessarily disapproved."

It therefore becomes obvious that the judgment of the trial court in the present case cannot be sustained.

The judgment is reversed.

Adams, P. J., and Thompson, J., concurred.

A petition for a rehearing was denied January 7, 1944, and respondent's petition for a hearing by the Supreme Court was denied February 3, 1944. Traynor, J., voted for a hearing.