[Civ. No. 17640. Second Dist., Div. Two. Dec. 21, 1950.]

JOHN ROSE et al., Respondents, v. LEROY PORTER et al., Defendants; METALIZING CORPORATION OF AMERICA (a Corporation) et al., Appellants.

[Civ. No. 17641. Second Dist., Div. Two. Dec. 21, 1950.]

JOHN F. NEWSOM et al., Respondents, v. LEROY PORTER et al., Defendants; METALIZING CORPORATION OF AMERICA (a Corporation) et al., Appellants.

Chase, Rotchford, Downen & Drukker, Donn B. Downen, Jr., and Otto M. Kaus for Appellants.

DeForrest Home and Joseph Shane for Respondents.

MOORE, P. J.—The two actions for damages arising out of personal injuries suffered in the same accident were consolidated for trial. Findings were made in each case and separate judgments were entered against identical defendants. The appeals were consolidated on one record. In view of appellant's stipulation that the evidence is sufficient to warrant the judgment against defendant Porter this discussion will be directed to a consideration of the demands of appellant, Metalizing Company of America, in whose name the offending car was registered.* The sole question for decision, therefore, is whether appellant as owner of the convertible coupe is liable for the damage it caused while in the possession of defendant Bauer and being driven by defendant Porter. The significance of appellant's claim of exemption from liability will appear as the movements of its machine are unfolded.

Defendant Bauer's home is in North Hollywood which in

---

*It was stipulated that the two named appellants are ''one and the same.''

general lies about 7 miles northwest of the business center of Hollywood. He operated a garage on Beverly Boulevard (which extends westward through the city of Los Angeles) and is located about 2 miles south of Hollywood Boulevard.

The convertible was kept in the possesssion of one Kunkler, an officer of appellant. He had in his employ a chauffeur, Prince Langon. During the nine months prior to the accident it was Prince's practice under Kunkler's orders to bring the coupe to Bauer's garage for adjustments. Bauer had repaired its mechanical parts about three weeks prior to its fatal visit when Prince told. him that he had been driving it "to the ranch and it had been overheating . . . that I should road check the car . . . to find out what was causing it to overheat." Having worked on the machine very little during the day, Bauer left his garage about 8:15 p. m., drove the convertible to Gilmore Ball Park, drank two bottles of beer and drove south to Culver City. There he visited a saloon and consumed three drinks of whiskey. Thence he proceeded west to Sepulveda Boulevard on which he traveled 5 or 6 miles south. He was then about 14 miles from his garage. His declared purpose was to drive the car over a long distance that it might become overheated. He testified that he had no reason for going into strange places so remote from his garage other than to give the automobile a longer test; that he did not use it for personal business or call on anyone. He finally entered a drive-in, at an intersection on top of a hill at about 12 o'clock midnight for a cup of coffee and to obtain the directions to Washington Boulevard. He there encountered defendant Porter who with a young lady sat in an automobile alongside the convertible. After answering his inquiries, Porter volunteered to drive the night wanderer back to the boulevard. Porter and his companion occupied the driver's seat and backed out of the driveway. Bauer was fatigued, "half asleep," and had no recollection of any part of the roadway or of the events occurring as Porter drove to the point of the accident where the respondents were both injured by reason of Porter's negligence.

Prior to June 14th Prince had left the coupe for the purpose of ascertaining the cause of its overheating, Bauer had examined and corrected all the appurtenances whose impairments cause a motor to overheat. When he drove the highways south of Culver City it was to ascertain whether such a drive would overheat the motor since a stationary

car will not set in motion "all things which cause overheating."

While Bauer testified that Prince told him to give the car a road test, the chauffeur denied that he had done so and testified that he did not even give Bauer permission to take the machine to his own home; that he had no authority to allow anyone to drive it. Bauer testified that as he drove west from Culver City and among the hills on Sepulveda Boulevard he felt the influence of the liquors he had consumed. Evidently his words did not adequately describe his intoxicated condition when he reached the drive-in for he fell asleep as soon as Porter relieved him of the responsibility of operating the car. At the trial Bauer was unable to testify as to the result of his road test and could not remember whether the vehicle overheated or not. There was no sound reason for his jaunt to Culver City and the Sepulveda area. If he could not remedy the overheating and required a drive to test the car, either of his familiar routes homeward over Cahuenga Pass or through Laurel Canyon would have supplied the hills to climb and excellent roadways for a test.

From no testimony save his own does it appear that Bauer was instructed by Prince Langon to drive the machine to the Gilmore Park or to Culver City or anywhere to test it for heating. No reasonable construction of the situation of the parties and the statements made implies that Bauer was directed or permitted to drive the car to a ball game or to drink two bottles of beer before proceeding to give it a road test. But if by any stretch of the imagination it could be reasonably held that Bauer was warranted in driving the vehicle any distance to test it, can it possibly be concluded that he had permission to drive it to a ball game; to indulge in tippling; to proceed 7 miles to a saloon in Culver City; to imbibe three drinks of whiskey and to go on to the hills along Sepulveda Boulevard which are no less than 12 miles from the ball park? Certainly, it could not reasonably be contended that the parties contemplated road testing the vehicle during the post-midnight hours in strange communities over unfamiliar roads and while under the influence of intoxicants. Bauer had no permission to take a stranger into the car, resign his position as operator and go to sleep while being conveyed to a familiar boulevard. The privilege of a permittee to have a stranger drive the automobile entrusted to him (*Hicks* v. *Reis,* 21 Cal.2d 654, 659 [134 P.2d

788]) implies the eager watchfulness of and supervision of the permittee over the newly found chauffeur.

Whether Kunkler as possessor and agent of appellant by any word or act or by any conduct of his chauffeur granted Bauer permission to drive the convertible over the distance and time above described is a fact equal in importance to that of ownership. ■ While it is a question of fact for determination of the trial court whether permission was given by the owner of a vehicle to its operator (*Krum* v. *Malloy,* 22 Cal. 2d 132, 136 [137 P.2d 18]) yet such finding must be based upon substantial evidence. No such proof is to be found in this record. ■ If a permissive use is prescribed in area or in time or purpose, a use beyond such time, area or purpose is not with the owner's permission. (*Barcus* v. *Campbell,* 90 Cal.App.2d 768, 772 [204 P.2d 65]; *Henrietta* v. *Evans,* 10 Cal.2d 526, 528 [75 P.2d 1051].) To hold appellant liable for the acts of Bauer and his benefactor who was serving Bauer only would be tantamount to a declaration that the owner is guarantor of the careful operation of his automobile even though it be in the hands of a thief.

The case of *Engstrom* v. *Auburn Automobile Sales Corp.,* 11 Cal.2d 64 [77 P.2d 1059], presents a factual situation closely akin to that here involved. The corporation loaned its car to a prospective purchaser who had already witnessed a demonstration. He asked permission to drive it to a hotel about 3 miles distant to show it to his family. He agreed to return it within two hours. He kept it 25 hours, during which an accident occurred. The injured party was denied recovery against the corporation because the operator driving the car without the consent of the owner was in no better position by virtue of the limited permission to drive it than that of a thief.

■ The fact that at the time of an accident the offending automobile was being driven by a person who was not the owner is not sufficient to establish that the driving was with the owner's permission. (*Rebaylio* v. *Herndon,* 6 Cal.App.2d 567, 569 [44 P.2d 581].)

The judgments against appellant are reversed with instructions to dismiss the actions as to the partnership and the corporation.

McComb, J., and Wilson, J., concurred.

A petition for a rehearing was denied January 8, 1951.