[Civ. No. 5523. Fourth Dist. Jan. 22, 1957.]

WILLIAM KEITH BURDINE, a Minor, etc., et al., Appellants, v. SEVERIN MOTORS, INC. (a Corporation) et al., Respondents.

Eric A. Rose and Floyd H. King for Appellants.

Dryden, Harrington, Horgan & Swartz and Vernon G. Foster for Respondents.

BARNARD, P. J.—This is an action for damages resulting from a collision between a 1936 Pontiac coupé driven by Frank Contreras and a motor scooter on which the minor plaintiffs were riding, which occurred on October 5, 1954. The complaint named Contreras, Severin Motors, Inc. and Harry Lucas, doing business as Lucas Auto Salvage, as defendants. It alleged, among other things, that at the time of the accident the defendants and each of them were, and now are, the owners of the Pontiac car, and that at the time in question Contreras

was driving the Pontiac with the knowledge and consent of each of the defendants. Contreras defaulted and a default judgment was entered in favor of the plaintiffs as against him. The case was tried by the court sitting without a jury. At the conclusion of the plaintiffs' case a judgment of nonsuit was entered in favor of Lucas. At the conclusion of the trial the court found, among other things, that prior to August 5, 1954, Severin Motors, Inc. was the owner of the Pontiac automobile; that on August 5, 1954, Severin Motors, Inc. sold the Pontiac to one Jacob Krause, for junk; that a few days later the pink slip and the white slip were mailed to Jacob Krause; that several days after August 5, 1954, and after the delivery of the Pontiac and the ownership and registration certificates to Krause, and before the accident happened, Krause transferred possession of the Pontiac to an unidentified Mexican man for cash, and delivered the ownership certificate to him; and that at no time did Severin Motors, Inc., either expressly or impliedly permit Contreras to use or operate this automobile. Judgment was entered that the plaintiffs take nothing against Severin Motors, Inc. The plaintiffs have appealed from that judgment and from the judgment in favor of Lucas.

It appears from the evidence that Severin Motors was a licensed dealer, selling automobiles wholesale and retail; that Lucas was a buyer of wrecked cars for junk; and that for two years prior to August 5, 1954, Lucas had bought an average of five cars each month wholesale from Severin Motors, through its sales manager S. T. Maxwell, for the purpose of junking them. In July, 1954, Severin Motors had taken this Pontiac in as part of the down payment on another car. It also received the pink slip signed by the original owner, and the white slip with an attached power of attorney signed by the original owner. On August 5, 1954, Krause came to Severin's used car lot and bought three old cars, including this Pontiac, at $10 each. A sales order was made out listing the three cars at a total price of $30, naming Lucas Auto Salvage as the purchaser and marked "Paid." This was signed "Lucas Auto Salvage by Jacob Krause," and by Maxwell as authorized executive of Severin Motors. A copy of this purchase order was given to Krause, on which Maxwell wrote "Please deliver Pinks and Whites to Mr. Krause." Krause took possession of the cars and a day or two later he received the pink and white slips. The pink slip then contained, in addition to the signature of the original owner

on line 2, an endorsement on line 3 on the back, which reads: "Severin Motors, Betty Miller Dlr No. 570 8-5-54." On August 5, Severin Motors also made out an invoice showing these three automobiles sold to Lucas Auto Salvage for $30. Severin Motors treated this as a wholesale and not a retail transaction, and no sales tax was collected. No notice of this transaction was given to the Motor Vehicle Department until after the accident.

Maxwell testified that on August 5, he sold this Pontiac to Krause who represented himself as being from Lucas; that Krause came in, asked "if I had some junk to sell," and stated that "he was buying for Lucas Auto Salvage"; that he found three cars and sold them to him for $10 apiece; and that he gave Krause a receipt for $30 made out to Lucas Auto Salvage. He also testified that on several occasions in the past a Mr. Griffin came with Mr. Lucas when he bought automobiles, and that on other occasions Griffin had bought automobiles for Lucas Auto Salvage; that on two or three occasions Mr. Krause was with Mr. Griffin; that Griffin had always signed the order when he came, but the two appeared to be coworkers; that on August 5, 1954, when Krause came in he asked Krause where his buddy was and Krause replied that he was sick; that he then asked Krause if he was still buying for Mr. Lucas, and Krause replied that he was; that he honestly believed at the time that Krause was buying these automobiles for Lucas Auto Salvage; and that he never saw the Pontiac again.

Krause testified that he bought this Pontiac and two other cars, paying $10 for each. When asked whether he drove the Pontiac off the lot, he replied: "I pulled it home." He testified that he did not tell Maxwell that he was buying these cars for Lucas or Lucas Auto Salvage; that he was given a copy of the purchase order; that he had previously been there with Mr. Griffin when Griffin was buying cars; and that he went into the office of Severin Motors a day or two later and received the pink and white slips. When asked whether he had read the words "Lucas Auto Salvage" on the purchase order when he signed it, he replied: "Well, I really didn't pay any attention to that." He further testified that shortly after August 5, he sold the Pontiac to an unidentified Mexican. The pink and white slips, in the form in which they had been delivered to Krause, were found in the possession of Contreras after the accident.

Betty Miller testified that on August 5, 1954, she was

employed by Severin Motors as a contract clerk; that she wrote the endorsement "Severin Motors, Betty Miller" which appears on the back of the pink slip which was delivered to Krause; that she was not an executive officer of the corporation; that she had oral authorization by the office manager of Severin Motors to endorse certificates of ownership of automobiles, but that such authorization was not in writing; that she had no recollection of this particular transaction; and that in the course of business it was her practice to deliver pink and white slips to the purchaser after endorsing them on behalf of Severin Motors. Lucas testified that "I run a wrecking yard"; that he was in the business of buying used cars that are ready to be wrecked "for junk"; that he never "restored" such cars; that he never saw this Pontiac car, did not buy it from Severin Motors, and did not authorize anyone to buy it on his behalf.

In contending that Severin Motors, Inc. was liable as owner of the Pontiac car under section 402 of the Vehicle Code, the appellants contend that the evidence was insufficient to show a sale of this car from Severin Motors to anyone, because the requirements of the Vehicle Code for transfers of motor vehicles were not complied with by Severin Motors. It is first argued that section 178 of the Vehicle Code was not complied with. That section provides that an owner who has made a bona fide sale or transfer of a vehicle and has delivered possession to a purchaser shall not, by reason of other provisions of that code, be deemed the owner of the vehicle so as to be subject to civil liability for the operation of the vehicle by another when such owner has either made proper endorsements and delivery of the certificate of ownership and delivered a certificate of registration, or when said owner has delivered or mailed to the department either a certain notice or appropriate documents for registration of such vehicle. While it appears here that Severin Motors sold this car and delivered possession of it, and that it delivered to Krause the pink and white slips with endorsements on the pink slip showing a transfer of ownership signed by the original owner and by "Severin Motors, Betty Miller" with the dealer's number and the date, it is argued that this was not a proper endorsement by Severin Motors within the meaning of section 178 because Betty Miller was not authorized in writing to make the endorsement on that certificate of ownership. Appellants rely on the case of *W. P. Herbert Co.* v. *Powell*, 90 Cal. App. 782 [266 P. 620], where it was claimed that a partner

had given his former partner authority to sell an automobile and to endorse the pink slip, and it was held that the former partner had no authority to sign a different name to the registration certificate. That case involved the giving of authority by an owner to a third party to sell and transfer a car under peculiar circumstances. In this case the transfer was regularly made by the owner, Severin Motors, and the only authority in question was the authority of Betty Miller to sign her employer's name on the certificate after the employer had made the sale. This was a purely mechanical act and falls within the principles followed in *Kadota Fig Assn.* v. *Case-Swayne Co.,* 73 Cal.App.2d 815 [167 P.2d 523] and *Murphy* v. *Munson,* 95 Cal.App.2d 306 [212 P.2d 603]. The evidence is sufficient to support the implied finding that the pink slip here was properly endorsed by Severin Motors, Inc. within the meaning, purpose and intent of section 178 of the Vehicle Code.

It is further argued in connection with the showing of a sale from Severin Motors, Inc. that no title to the Pontiac passed because Severin Motors thought they were selling to Krause as agent of Lucas when, in fact, he was not the agent of Lucas. The evidence was conflicting as to whether or not Krause represented that he was acting for Lucas, and the trial judge could resolve that conflict either way. While the transfer to Krause was undoubtedly brought about by his misrepresentation that he was acting for Lucas, the title to the car was actually transferred to Krause and he was given possession of the car and also given the certificate of registration and certificate of ownership, which would enable him to reregister the car with the Motor Vehicle Department. It cannot reasonably be held that the evidence was not sufficient to show a sale from Severin Motors within the meaning of the pertinent provisions of the Vehicle Code. Severin Motors, having made a bona fide sale of this car and delivered possession of the car together with the pink and white slips endorsed by the owner, was not thereafter to be deemed the owner of the car. (Veh. Code, § 178; *Piacun* v. *Hexem,* 18 Cal.App.2d 145 [63 P.2d 315]; *Weinberg* v. *Whitebone,* 87 Cal.App.2d 319 [196 P.2d 963]; *Woods* v. *Eastridge,* 99 Cal.App.2d 625 [222 P.2d 296].)

It is next contended that Severin Motors impliedly permitted Contreras to use and operate this automobile and that the evidence is insufficient to support the court's contrary finding. It is argued that Krause was given possession of this

car without restrictions of any kind; that Contreras was a permittee of Krause; and that Severin Motors by reason of its unlimited permission to Krause is estopped from asserting that it had not given its permission to his subpermittee to operate the car. It is well established that when possession of an automobile is delivered to another for a limited time, purpose or use, a substantial deviation therefrom absolves the owner from liability. (*Henrietta* v. *Evans,* 10 Cal. 2d 526 [75 P.2d 1051]; *Engstrom* v. *Auburn Auto. Sales Corp.,* 11 Cal.2d 64 [77 P.2d 1059]; *Barcus* v. *Campbell,* 90 Cal.App.2d 768 [204 P.2d 65]; *Rose* v. *Porter,* 101 Cal.App.2d 333 [225 P.2d 245].) In the Engstrom case it was pointed out that an inference of permissive use could not reasonably be drawn from evidence that the car was being operated by one who had stolen it. "Beyond question, this Pontiac car was sold for $10, and sold with the understanding that it was to be junked, and the same principles should be applied here as in a case where a car was stolen. There is ample evidence that the sale of the car was brought about by misrepresentations made by Krause which would reasonably lead Severin Motors to believe and understand that the car was to be junked; that Severin Motors did so believe; and that it sold the car for that purpose only. The facts fully justified the court in finding that Severin Motors did not expressly or impliedly give its permission to Krause or to anyone else to use or operate this car on the highways, with the possible exception of driving it to Lucas' junk yard for the purpose of being junked. In *Hobbs* v. *Transport Motor Co.,* 22 Cal. 2d 773 [141 P.2d 738], the court approved the giving of instructions as to an owner's liability where its assent was obtained by fraudulent representations, trick or device. The question was one of fact for the trial court and the evidence, with the reasonable inferences therefrom, support the findings and conclusions to the effect that the car was not delivered without restrictions of any kind, and that there was no implied permission for its operation on the highway two or three months later. Under the evidence, it is fully apparent that this case does not come within the meaning, purpose and intent of section 402 of the Vehicle Code.

 It is further contended by the appellants that the court erred in granting the motion for nonsuit as to the defendant Lucas because there was a conflict between the testimony of Lucas and the testimony of Maxwell, to the effect that he sold the automobile to Krause in the belief that he was acting for

Lucas Auto Salvage. There was no evidence showing any ownership of the Pontiac car by Lucas or any express or implied permission by him to anyone to operate the car.

The judgments appealed from are affirmed.

Griffin, J., and Mussell, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied March 20, 1957.