[Civ. No. 24054. Second Dist., Div. Three. May 24, 1960.]

HAROLD LEE GARMON, Appellant, v. O. N. SEBASTIAN, Respondent.

Sanford I. Carter and Gerson Marks for Appellant.

Gilbert, Thompson & Kelly and Jean Wunderlich for Respondent.

FORD, J.—The plaintiff appeals from a judgment in favor of the defendant Sebastian in an action for personal injuries.

The plaintiff was employed at the Quick-Way Car Wash in Inglewood. He was engaged in polishing automobiles. The defendant Scott was also employed there. His duties consisted of wiping off automobiles after they had gone through the washing process and had been taken from the line where the washing occurred. The defendant Sebastian was the owner of a Chrysler automobile which he had left to be washed. Scott, when he had finished wiping off Sebastian's car after the washing process, negligently put the car in reverse gear and caused it to collide with an automobile being polished by the plaintiff. The plaintiff was pinned against the wall and suffered serious injuries. Insofar as the defendant Sebastian was concerned, the plaintiff relied upon the provisions of the Vehicle Code relating to the liability and responsibility of the owner

of an automobile for the negligence of another who is "using or operating the same with the permission, express or implied, of such owner."[1] While the jury found for the plaintiff as against the defendant Scott, the verdict was for the defendant Sebastian.

The appellant's position is that, as a matter of law, the evidence established the liability of the respondent Sebastian for the negligence of Scott as such negligence was determined by the jury. ■ In reviewing the evidence with respect to that issue on this appeal, all conflicts must be resolved in favor of the respondent and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. ■ When a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. ■ When different inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court. (*Crawford* v. *Southern Pacific Co.*, 3 Cal.2d 427, 429 [45 P.2d 183].)

The polishing shed was adjoining the wash-rack shed but was smaller and some distance back from the end of the wash rack where the automobiles left the enclosure after having gone through the washing process. The appellant testified that the distance from that point back to the polishing stall was approximately 100 yards but the diagram in evidence indicates that the distance may have been substantially less. On cross-examination, the appellant Garmon testified as follows: "Q. Mr. Garmon, so I understand it, where you were working down there is called the polishing area, is that correct? A. That is the polishing shed. Q. And the wash area is over here in this part of the map, is that correct; isn't this the wash where they take the cars through and wash them? A. Yes. Q. Had you ever prior to the date of this accident observed cars that had gone through the wash rack here, that had not yet been dried, being backed up here and put in the area of the polish shed? A. No, that hadn't been done. Q. That hadn't been done, had it? A. It is pulled out. Q. So when they come out of here, they pull out and come down in this general direction towards

---

[1] At the time of the accident involved in this case, the provisions as to such liability were embodied in section 402 of the Vehicle Code. They are now found in sections 17150-17157 of the Vehicle Code of 1959.

Manchester, isn't that true? A. That is correct. Q. And when you spoke a while ago on direct examination it was about 100 yards from the entrance[2] to the wash rack back to the polish shed, you mean from this end of the wash place back to where the polish shed is? What did you mean by that 100 yards? A. Well, I stated there a moment ago that it was approximately 100 yards. I wouldn't say—I didn't take it—— Q. It is just your estimate? A. Estimate. I am not very good at measurement, but I just estimate it.''

The respondent Sebastian, the owner of the automobile which Scott caused to collide with the car being polished by the appellant, testified as follows: He lived in Sherman Oaks. On the day of the accident, he brought his automobile onto the car-wash premises in the middle of the day. His place of business was only about a block and a half from there and he was having the car washed while he went to a hardware store. He had had his automobile washed there many times before. He drove his car to the point where the chain would be hooked on to it. The only statement he made to the man to whom he paid his money was that he would pick the car up after he came back from the hardware store. As to what had occurred in the past, he testified: ''Unfortunately, I never stuck around the car wash while they were washing the car because I had many things to do and I don't see the car until I come back and it is sitting next to the street and I get in and drive out. . . . It is headed right at the curb, the curb line.'' On a diagram, the witness indicated an area where the cars were usually parked which point was in the vicinity of the end of the enclosure from which the cars were taken upon completion of the washing process. He further testified: ''Q. Now, therefore, because of your previous experience, you left the car there to be washed, did you not? A. That's right. Q. And you told them you'd be back later to pick up your car? A. That's right. Q. You understood, of course, that the car would go through the rack? A. Right. Q. That an employee would then take the car and detail it, or polish it, and dry it off, is that correct? A. That's right. Q. Then they would park it in this parking area and leave it there to await your—— A. They usually dry it off out in the parking area. They don't do that

---

[2] That ''exit'' rather than ''entrance'' was the point to which the appellant had reference is clear from the following excerpt from his direct examination: ''Q. Approximately what distance is it, Mr. Garmon, from the end of the wash rack where the cars come out back to the polishing stall that we have designated with the letter 'P'? A. Approximately 100 or so yards . . . not just exactly.''

at the end of the rack. That is done out there next to the street. Q. In other words, they drive it off the rack into the parking area and there do the detailing? A. This is where it is done, as a rule, I notice. Q. This is the general practice that you were familiar with? A. That's right.'' His car went right on the rack when he left it and he was gone about 30 minutes. While the car-wash was ''called five minutes,'' it sometimes took 15 minutes, depending on the help available. Under examination by his own counsel, the respondent testified: ''Q. Did you ever see your car parked or moved anywhere, prior to this accident, down by the polishing shed? A. No, because I never had my car polished and there's never been occasion for it. Q. Did you ever see it there at any time in the area of the polishing shed? A. No, only this one time. Q. That is after the accident, when you came back? A. That's right. Q. Before it was either down in this area (indicating) or down here by the driveway where you'd just get in and drive it out in the street? A. It was only in the other area once. Q. Just on one occasion? A. That's right. Q. And on all other occasions out here by the Manchester driveway? A. That's right. Q. When you came back, how many cars did you observe besides your car in the immediate vicinity? A. I believe there was two sitting next to the curb, ready to go.'' He was familiar with the fact that the employees of the Quick-Way Car Wash did move the cars from the rack to the parking area in order to ''detail'' them and then deliver them to the owners.

It is clear, of course, that some implied permission was given by the respondent to persons employed in the car-wash enterprise to move his automobile from the end of the car-wash enclosure to a point on the premises where he would re-enter it and drive it away. The problem before the jury was the extent of that implied permission. As stated in *Fountain* v. *Bank of America,* 109 Cal.App.2d 90, at page 98 [240 P.2d 414] : ''While we have said an issue of fact was presented as to whether or not use limitations were being violated at the time of the accident, yet that is but to say that an issue of fact in respect to such claimed violation was to be decided by the jury, for where permission is granted to operate a car for a limited time or for a limited purpose or within limitations as to place of use a substantial violation of any of such limitations terminates the original express consent and makes the subsequent use without permission. (*Henrietta* v. *Evans,* 10 Cal.2d 526, 528 [75 P.2d 1051].)'' (See also *Bur-*

*dine* v. *Severin Motors, Inc.,* 147 Cal.App.2d 751, 757 [305 P.2d 1008]; *Rose* v. *Porter,* 101 Cal.App.2d 333, 337 [225 P.2d 245].) The existence of the requisite permission cannot be left to speculation or conjecture. It must be affirmatively proved. (*Scheff* v. *Roberts,* 35 Cal.2d 10, 12 [215 P.2d 925]; *Barcus* v. *Campbell,* 90 Cal.App.2d 768, 773 [204 P.2d 65].) Whether such permission was present at the time of the accident usually presents a question of fact. (*Hobbs* v. *Transport Motor Co.,* 22 Cal.2d 773, 778 [141 P.2d 738].)

In the case at bar, the jury was warranted in drawing the inference that the permission to be implied under the circumstances was far more limited than would be the extent of the permission where, for instance, an owner lends his automobile to a friend or neighbor. A customer of a concern which offers modern car-washing services on what is equivalent to a production-line basis makes no deliberate choice of a particular person by whom his automobile shall be driven. It is reasonable to infer that he expects that there will be only a minimum of movement of his vehicle after it leaves the enclosure through which it is drawn by a chain in the course of its washing. Under the evidence in this case the jury was not bound to find that the respondent had reason to anticipate that his car would be moved near the polishing enclosure. The trier of fact was justified in inferring that the only anticipated movement was over the distance from the end of the wash rack to the usual place of parking and that that was the only extent to which the owner consented that his vehicle might be driven by some employee of undetermined identity. What is a substantial deviation from a permitted use is a question of fact under the circumstances of each case. (See *Rose* v. *Porter, supra,* 101 Cal.App.2d 333, 337; *cf. Fountain* v. *Bank of America, supra,* 109 Cal.App.2d 90, 98.) We cannot say that there was not substantial support in the evidence for the implied finding of the jury that the permission given by the respondent did not embrace driving the automobile to a point away from the usual place of parking cars freshly washed but that such permission was limited to such usual movement.

The appellant complains of the refusal of the trial court to give certain instructions requested by him. The first such instruction consisted of a quotation of subsection (a) and a portion of subsection (b) of section 402 of the Vehicle Code. Another such instruction was in words as follows: "Section 402 of the Vehicle Code is designed and intended to protect persons who might be injured either upon the public highway

or upon private property as the result of the negligent operation of motor vehicles by persons other than the owners, who are operating the same with the permission, express or implied, of the owners.'' A third such instruction was as follows: ''The purpose of section 402 of the Vehicle Code is to protect innocent third parties from the careless use of automobiles and this protection is paramount to the rights of an owner who has permitted the use of his car by others, even though he, personally, was not guilty of negligence.''　▮▮▮▮　Finally, the appellant asserts that the jury should have been instructed that: ''It has been established in this case that at the time of the accident in question, the vehicle then being used by the defendant Scott was owned by the defendant Sebastian and that it was being used with the permission of the owner. It follows, therefore, under the law, that if one is liable, both are liable.'' Since there was a question of fact for the jury with respect to the issue of permissive use of the automobile, the instruction last-stated was properly refused.　▮▮▮▮　There was no error in refusing the other instructions because the jury was properly and sufficiently instructed with respect to the provisions of section 402 of the Vehicle Code.[3]

The respondent makes a carefully-reasoned argument that the appellant was limited to his remedy under the workmen's compensation provisions of the Labor Code and was not, under the facts of this case, entitled to proceed against the respondent pursuant to the provisions of section 402 of the Vehicle Code.

---

[3]The jury was instructed (omitting herefrom an instruction as to the maximum amount of damages under section 402) as follows: (1) ''The law of this state provides that when the owner of a motor vehicle expressly or impliedly gives his permission to another to use the vehicle, any negligence on the part of the person so using it shall be imputed to the owner for all purposes of civil damages.'' (2) ''In the case involving Mr. Garmon's claim against the defendant Sebastian, if you should find the defendant Scott was negligent and such negligence was the proximate cause of plaintiff's injuries, you have an additional issue or question to determine, namely, did the defendant Scott have permission, express or implied, to drive the automobile on the premises. If your answer is in the negative, no, you will return a verdict for the defendant Sebastian, regardless of what your decision may be as to the other defendant, Scott. If you answer it in the affirmative, yes, and having previously found the defendant Scott negligent, your verdict must be in favor of the plaintiff Garmon and against the defendant Sebastian.'' (3) ''Consent to use an automobile may be implied from the circumstances under which such use may reasonably be anticipated.'' (4) ''In this action, the plaintiff has the burden of proving the following issues: (1) That the defendant Scott was negligent and such negligence was the proximate cause of his injuries. (2) That the defendant Scott was driving the automobile which was involved in this accident with the consent, either express or implied, of the defendant owner Mr. Sebastian.''

He discusses *Baugh* v. *Rogers*, 24 Cal.2d 200 [148 P.2d 633, 152 A.L.R. 1043], and *Popejoy* v. *Hannon*, 37 Cal.2d 159 [231 P.2d 484]. However, in view of the matters heretofore discussed in this opinion, we need not reach this contention of respondent. (But see *Lunderberg* v. *Bierman*, 241 Minn. 349 [63 N.W.2d 355, 43 A.L.R.2d 865].)

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 20, 1960.