[L. A. No. 26431.   In Bank.   Nov. 30, 1961.]

ROBERT EDWARD PETERSON, a Minor, etc., Plaintiff and Respondent, v. GRIEGER, INC., Defendant and Appellant.

44

Jarrett & Morgan, Morgan, Holzhauer & Wenzel and Lee B. Wenzel for Defendant and Appellant.

John P. Brown and Roger A. Saevig for Plaintiff and Respondent.

WHITE, J.—This is an appeal by defendant Grieger, Inc. from a judgment for plaintiff Robert Edward Peterson, a minor, herein represented by his guardian *ad litem*, Russell H. Peterson, in an action for damages for personal injuries

sustained when plaintiff was struck while riding his bicycle by an automobile owned by defendant Grieger, Inc., but which was then being operated by an alleged permittee of the defendant Audley L. Cole, an operator of a parking lot. Judgment in the amount of $2,700 was entered upon a jury verdict for plaintiff against both defendants. The liability of defendant owner Grieger, Inc., was predicated exclusively upon the provisions of former section 402, subdivision (a) (now § 17150), of the Vehicle Code. The principal question presented is whether the vehicle was being operated with implied permission of defendant owner when the accident occurred.

On the evening of January 25, 1958, 17-year-old Michael Leovich stopped by a parking lot operated to accommodate vehicles belonging to patrons of a Los Angeles restaurant. He often stopped by to visit with two of his teen-age friends who parked cars as regular employees of Audley L. Cole. Cole directed or allowed Leovich to park cars for him even though Leovich did not have an operator's license. The restaurant parking facility was operated by Cole as a part-time job for the privilege of keeping the parking tips.

William J. Grieger drove up to the restaurant at approximately 6 :45 that evening in an automobile owned by Grieger, Inc., but used as Grieger's personal car.[1] It was a Saturday night, the restaurant parking lot was crowded, and Grieger had to park the vehicle over the sidewalk for a few minutes before driving into the main parking lot, which approximately surrounds the restaurant. Cole gave Grieger a parking ticket, and Grieger then went into the restaurant leaving the motor of the automobile running. Cole then directed or allowed Leovich to get into the car to park it. The parking facilities utilized by the restaurant included: (1) a relatively large main area immediately adjoining the restaurant, (2) one side of a short alley leading to a nearby intersection, (3) the curb area near that intersection, and (4) another parking lot on the other side of the intersection. Since the area near the restaurant, the alley, and the intersection area were full, Leovich drove the Grieger automobile across the main lot, and into and through the alley toward the overflow parking lot. After stopping at the end of the alley, Leovich drove into the intersection wherein he collided with plaintiff's bicycle, which plaintiff was riding along the thoroughfare.

---

[1] There is no contention that William J. Grieger was not acting within the scope of his authority.

Grieger testified that he had dined at the restaurant on four or five previous occasions, and that he had recognized Cole as the operator of the parking facility that Saturday evening. He testified that there was no conversation with Cole concerning parking the automobile. Grieger testified as follows on direct examination: "Q. Were you paying a heck of a lot of attention as to what happened to the car after you ran into the restaurant there? A. No, I did not, because I left it in charge of the caretaker." When Grieger was asked, "You just tell us what you meant . . . about leaving it in charge of the caretaker with respect to where that car would be parked," he answered, "Well, my thought would be that they had that one parking lot; that was my knowledge, that one lot and that one lot only." He was then asked, "All the [implied] permission that you had given them was to park in that space around there [the restaurant]?" Grieger responded, "I would say yes." But on cross-examination he testified: "Q. Mr. Grieger, is it a fair statement of fact to say that you did leave it in charge of Mr. Cole to be parked? A. Yes. Q. Isn't it also a fair statement of fact to say, Mr. Grieger, that it didn't enter your mind at the time you left that car in charge of the caretaker as to *where* it was going to be parked? Did it, now, really, in all honesty? A. *I had no idea.*" (Emphasis added.)

Leovich testified that he had been going to the parking lot four or five times per week for approximately two months prior to the accident, and that a week or two after he first went there Cole asked him to park some cars during especially busy evenings. He also testified that Cole was fully aware that he had no operator's license. Leovich appeared to be quite familiar with the procedure and the numbering system in the lot, although he testified that he had received no wages from Cole. He also testified that he had driven vehicles down to the overflow lot on 15 or 20 previous occasions upon Cole's request, and that he had never driven a vehicle to that lot except upon Cole's express instruction. According to Leovich, after Grieger drove up and Cole gave Grieger the parking ticket, Cole said to Leovich: "Take the car and drop it to the lower lot." Leovich also testified that approximately 45 minutes after the accident Cole told him that: ". . . if they asked me if I parked cars before, just say 'Yes, three to four times.' "

Cole admitted that Leovich frequented the parking lot, but at the trial denied ever having expressly asked him to park

a vehicle. However, Cole's testimony indicated that he at least made no objection to the boy's parking the Grieger automobile. Also, shortly after the accident Cole admitted to an investigating officer that when Leovich had asked concerning the automobile "[S]hould he pull it down," Cole had responded, "Yes, just pull it down."

During the trial defendant Grieger, Inc. moved for a nonsuit on the ground of lack of evidence of permission for Leovich to operate the automobile within the meaning of Vehicle Code, section 402. In denying the motion, the court stated that there was no question but that there was sufficient evidence to support plaintiff's case against the owner of the vehicle. The court further remarked: "The man drives into a parking lot and leaves the car with a caretaker, and the caretaker is entitled to park it in that lot or any one in the immediate vicinity, if that lot is full. I don't think there is express permission required there at all."

It was dark and raining very hard at the time of the collision. Leovich testified that after stopping at the end of the alley, he "proceeded on across the street." He was asked, "Approximately how much distance separated the car which you were driving and the bicycle when you first observed it?" Leovich answered, "It couldn't have been more than a foot or two at the very, very most because when I observed him, he was almost at the front fender then, and the line of vision from the [automobile] light hasn't a chance to go out that far." He continued: "I put my foot on the brake pedal and my foot was all wet from being out in the rain, and it slipped off the corner of the pedal and onto the gas . . . [and] I ran the boy down." Plaintiff, who was 16 years old at the time of the accident, testified: "I saw he was coming and I turned down the street to try to get out of the way." He also testified that his bicycle light was then functioning, and could be seen from a considerable distance. The jury was instructed concerning contributory negligence.

Plaintiff was thrown to the street by the impact, injuring his ankles, knees, legs, and hands. He was treated by a doctor for approximately a month, but he was walking with a limp and his knees, left leg, and left ankle continued to give him pain. He was unable to continue with his employment as a delivery boy for approximately six weeks. He testified that several months after the accident: "If I bumped my knees or my leg, it would pain. My knees would feel like they were cut

open and gushing out blood.'' His knees were visibly scarred at the time of trial (October 1959), and he then stated that: ''[I]f I hit my leg where the bruises are at, it will make me limp for a couple of days and hurt for a week or so, and my knees still feel like they are broke open.'' There was testimony by a physician that plaintiff's left ankle may require future surgery as a result of the accident. Also, a radiologist testified, on the basis of x-rays, to the presence of a bone spur in the left ankle area which may require surgical treatment.

Defendant contends that the evidence was insufficient to sustain a finding that Leovich was driving with permission of the owner within the meaning of Vehicle Code, section 402, when the accident occurred. Section 402, subdivision (a) provided: ''Every owner of a motor vehicle is liable and responsible for the death of or injury to person or property resulting from negligence in the operation of such motor vehicle . . . by *any person* using or operating the same with the *permission, express or implied,* of such owner, and the negligence of such person shall be imputed to the owner for all purposes of civil damages.'' (Emphasis added.) Initially then, it is clear that defendant is liable under former section 402 if Leovich was operating the Grieger automobile with implied permission of the owner.

In urging that Leovich was not operating the automobile with implied permission when the accident occurred, defendant contends that the judgment decreeing the owner's liability herein should be reviewed in light of a principle of narrow statutory construction, since former section 402 enlarged a vehicle owner's common-law liability. (See *Burgess* v. *Cahill*, 26 Cal.2d 320, 323 [158 P.2d 393, 159 A.L.R. 1304].) But the latter principle of statutory interpretation may be accorded only limited application in situations dealing with an owner's liability under former section 402, since section 4 of the Civil Code, in effect when former section 402 of the Vehicle Code was originally enacted as section 1714¼ of the Civil Code, provides that the provisions of the Civil Code ''are to be liberally construed with a view to effect its objects and to promote justice.'' And section 2 of the Vehicle Code has provided at all relevant times that: ''The provisions of this code, in so far as they are substantially the same as existing provisions relating to the same subject matter, shall be construed as restatements and continuations thereof and not as new enactments.'' (See *Baugh* v. *Rogers,* 24 Cal.2d 200, 210-211 [148 P.2d 633, 152 A.L.R. 1043].) Thus for-

mer section 402 must in general be liberally construed in accordance with "the palpable intent of the Legislature to impose a new liability consonant with new conditions."[2] (*Baugh* v. *Rogers, supra,* 24 Cal.2d 200, 211; see *Webster* v. *Zevin,* 77 Cal.App.2d 855, 858-859 [176 P.2d 960] hear. den.)

Defendant also strongly urges the doctrine that permission under former section 402 must be affirmatively proved and not left to "speculation or conjecture nor be assumed." (See *Scheff* v. *Roberts,* 35 Cal.2d 10, 12 [215 P.2d 925].) But the latter rule is merely adjunctive to the central principle that evidence establishing the fact of permission is an essential part of a plaintiff's case in attempting to impose vicarious liability upon a defendant owner under former section 402. (See *Scheff* v. *Roberts, supra,* 35 Cal.2d 10, 12; *Elkinton* v. *California State Auto. Assn.,* 173 Cal.App.2d 338, 342 [343 P.2d 396]; see also *Irvine* v. *Wilson,* 137 Cal.App.2d Supp. 843, 846-847 [289 P.2d 895].)

It is well settled, however, that unless the evidence points to one conclusion only, the question of the existence of the requisite permission under former section 402 is one to be determined by the trier of fact, "upon the facts and circumstances in evidence and the inferences reasonably to be drawn therefrom." (*Casey* v. *Fortune,* 78 Cal.App.2d 922, 923 [179 P.2d 99]; *Hobbs* v. *Transport Motor Co.,* 22 Cal.2d 773, 778 [141 P.2d 738].) Where the trier of fact has drawn an inference of such implied permission from conflicting evidence bearing on that issue, which inference appears to be reasonable and supported by substantial evidence, that factual conclusion of permissive use may not be disturbed on appeal. (*Garmon* v. *Sebastian,* 181 Cal.App.2d 254, 257 [5 Cal.Rptr. 101], hear. den.; *Mize* v. *Jorden,* 116 Cal.App.2d 301, 305 [253 P.2d 702].) Furthermore, the evidence

---

[2]The asserted rule of strict construction has been legitimately applied in certain situations, however, as in *Weber* v. *Pinyan,* 9 Cal.2d 226 [70 P.2d 183, 112 A.L.R. 407], where that doctrine was applied in determining that wilful misconduct by the permittee-operator was not to be imputed to the owner under former section 402 (see 9 Cal.2d at 229, 237-238) or in *Exchange Casualty & Surety Co.* v. *Scott,* 56 Cal.2d 613 [15 Cal.Rptr. 897, 364 P.2d 833], where the rule of strict construction was held to have applied to a prior final adjudication of the owner's liability under former section 402 to an extent sufficient to allow a subsequent adjudication of that owner's liability for the same accident within the terms of a policy of liability insurance, to which no rule of strict construction could be applied. (See 56 Cal.2d at pp. 619-620; see also *Jones* v. *Allen,* 185 Cal.App.2d 278, 281-283 [8 Cal.Rptr. 316]; *Cook* v. *Superior Court,* 12 Cal.App.2d 608, 610-612 [55 P.2d 1227]; *Swing* v. *Lingo,* 129 Cal.App. 518, 526-527 [19 P.2d 56].)

must be viewed most favorably to respondent, and all reasonable inferences should be indulged in to uphold the judgment. (*Anderson* v. *Wagnon,* 110 Cal.App.2d 362, 363-364 [242 P.2d 915].)   Viewing as we must the conflicting evidence herein bearing on the permissive use given Cole by Grieger, and the subsequent permission given to Leovich by Cole, we are persuaded that it was reasonable for the trier of fact to infer that the automobile was being operated with William J. Grieger's implied permission when the accident occurred. (See *Souza* v. *Corti,* 22 Cal.2d 454, 460-461 [139 P.2d 645, 147 A.L.R. 861] ; *Elkinton* v. *California State Auto. Assn., supra,* 173 Cal.App.2d 338, 344-345, hear. den.; *Davidson* v. *Ealey,* 69 Cal.App.2d 254, 258-259 [158 P.2d 1000] ; *cf. Buckley* v. *Aetna Life Ins. Co.,* 297 Mass. 395 [8 N.E.2d 748].)

   Defendant specifically contends that where permission is granted for use in a limited area, operation beyond the limits of that area is not within the owner's permission for purposes of liability under former section 402. (See *Henrietta* v. *Evans,* 10 Cal.2d 526, 528-529 [75 P.2d 1051].) It is argued that Grieger gave Cole implied permission to have his automobile parked only in the main restaurant parking lot, and that Cole's sending the car to the overflow lot constituted a violation of authority which terminated that authority or implied permission. But where restrictions by the owner as to time, purpose, or area are involved, the owner's permission is considered terminated only where there has been a *substantial violation* of such restrictions (*Henrietta* v. *Evans, supra,* 10 Cal.2d 526, 528-529; *Garmon* v. *Sebastian, supra,* 181 Cal.App.2d 254, 259-260, hear. den.), and it is a question of fact whether under all the circumstances presented, such restrictions as to time, purpose, or area have been substantially violated prior to the occurrence of the accident so as to vitiate the owner's permission and thus absolve him from the vicarious liability imposed under former section 402. (*Garmon* v. *Sebastian, supra,* 181 Cal.App.2d 254, 259-260, hear. den.; *Fountain* v. *Bank of America,* 109 Cal.App.2d 90, 98-99 [240 P.2d 414] hear. den.)   It was a crowded Saturday night at the restaurant, Grieger had to wait upon the sidewalk before driving into the crowded parking lot, and he said nothing to Cole about *where* the automobile was to be parked. Thus the jury could have reasonably inferred either that Grieger gave Cole implied permission to have his automobile driven to a nearby parking lot if necessary, or that such

operation did not amount to a substantial violation of the physical limits of Grieger's implied permission. (Compare with *Henrietta* v. *Evans, supra,* 10 Cal.2d 526, 528; *Burdine* v. *Severin Motors, Inc.,* 147 Cal.App.2d 751, 756-757 [305 P.2d 1008]; *Rose* v. *Porter,* 101 Cal.App.2d 333, 336-337 [225 P.2d 245].) It should be noted in this connection that the operator was not joyriding when the accident occurred, but was merely carrying out a routine procedure used at Cole's parking lot during busy periods.

Defendant also argues that the facts of the instant case are so closely analogous to the facts in *Garmon* v. *Sebastian,* 181 Cal.App.2d 254 [5 Cal.Rptr. 101], wherein a finding of no permission within former section 402 was upheld (see 181 Cal. App.2d at p. 260), that on the basis of *Garmon* there was an absence of permission herein as a matter of law. In the *Garmon* case the defendant owner left his automobile at the starting point of the machinery of a mechanized car wash, and the accident occurred while the automobile was being driven near a polishing shed on the premises, which was some distance from the area where the owner testified that he had observed that the "detailing" ordinarily was completed. (See 181 Cal. App.2d at pp. 258-259.) The District Court of Appeal held: "*We cannot say that there was not substantial support in the evidence* for the implied finding of the jury that the permission given by the [owner] did not embrace driving the automobile to a point away from the usual place of parking cars freshly washed but that such permission was limited to such usual movement." (Emphasis added.) (181 Cal.App.2d at p. 260.) However, since in the case now engaging our attention the owner testified that he merely left his automobile at the restaurant to be parked, and since as indicated above, the existence of the requisite permission presents a question of fact dependent upon the specific circumstances of each case, the holding in the *Garmon* case does not persuade us to set aside the implied finding by the jury as to the requisite permission herein. While the implied finding of nonpermissive use in the *Garmon* case may appear to be contrary to the paramount policy of former section 402 of protecting injured third parties in situations where it is impossible to collect damages from the negligent operator (*Burgess* v. *Cahill, supra,* 26 Cal.2d 320, 323; *Elkinton* v. *California State Auto. Assn., supra,* 173 Cal.App.2d 338, 345; see Veh. Code, § 17152; 7 Stan.L. Rev. 507, 527), the operation of the substantial evidence rule

54

precluded an appellate court from setting aside that implied finding of lack of permission. (See 181 Cal.App.2d at pp. 257, 260; see also *Boland* v. *Gosser,* 5 Cal.App.2d 700 [43 P.2d 559].)

A further contention is that even if the implied permission extended to parking the automobile on the lower lot, that permission was vitiated when Cole violated the law in allowing an unlicensed driver to operate the automobile (see Veh. Code, §§ 14605, subd. (b), 14606), or if not so vitiated by Cole's violation of law, Grieger's implied permission was terminated when Leovich operated the vehicle in violation of law. (See Veh. Code, §§ 12500, 14605, subd. (a).) ▮▮▮▮ But Grieger left the automobile in Cole's custody, and for purposes of section 402 liability, "[i]f the owner entrusts his car to another he invests him with the same authority to select an operator which the owner has in the first instance." (*Haggard* v. *Frick,* 6 Cal.App.2d 392, 394 [44 P.2d 447] hear. den.; accord *Souza* v. *Corti, supra,* 22 Cal.2d 454, 457-458, 460-461; *Anderson* v. *Wagnon, supra,* 110 Cal.App.2d 362, 365, 369; *Herbert* v. *Cassinelli,* 61 Cal.App.2d 661, 664-665 [143 P.2d 752] hear. den.; cf. *Burgess* v. *Cahill, supra,* 26 Cal.2d 320, 325; *Davidson* v. *Ealey, supra,* 69 Cal.App.2d 254, 258-259; compare with *Exchange Cas. & Surety Co.* v. *Scott, supra,* 56 Cal.2d 613, 622; *Norris* v. *Pacific Indemnity Co.,* 39 Cal.2d 420, 424-426 [247 P.2d 1].)

Defendant's citation of *Rose* v. *Porter,* 101 Cal.App.2d 333 [225 P.2d 245], for the proposition that permission under section 402 may be effectively restricted as to the individual who is to operate the automobile, is incorrect, since the holding in favor of defendant owner in the *Rose* case was based upon that permittee's having substantially exceeded limitations of "time, area or purpose." (See 101 Cal.App.2d at p. 337.) ▮▮▮▮ However, language in *Rose* which might indicate that an owner is responsible for the operation by a subpermittee only where the permittee directly and personally supervises the subpermittee's driving, is hereby disapproved. (See 101 Cal.App.2d at 336-337, [2].) The owner is thus liable for negligent acts by a subpermittee even though the subpermittee operated the owner's vehicle with authorization only from the permittee, since "[t]he foundation of the statutory liability is the permission given to another to use an instrumentality which if improperly used is a danger and menace to the public." (*Burgess* v. *Cahill, supra,* 26 Cal.2d

320, 323; see 147 A.L.R. 875, 876.) It is not disputed that Leovich's attempt to park the automobile was within the use contemplated by Grieger. (See *Souza* v. *Corti, supra,* 22 Cal.2d 454, 460-461; *Davidson* v. *Ealey, supra,* 69 Cal.App.2d 254, 258-259.)

The fact that Cole violated the law in selecting an operator (see Veh. Code, § 14606) did not vitiate the permission given, since it has been stated that where the owner ''gave specific instructions as to the manner of operation, the speed and care in driving, etc., it would not be reasonable to hold that the use was without permission if any of these detailed instructions were violated, for . . . the liability of the owner [under § 402] could in almost every case be defeated by some showing of violation of authority.'' (*Henrietta* v. *Evans, supra,* 10 Cal.2d 526, 529; accord *Hobbs* v. *Transport Motor Co., supra,* 22 Cal.2d 773, 778.) Any implied limitation that Cole would select a licensed operator in compliance with law must be considered ineffective as a restriction only upon the manner of operation.[3]

Nor may Leovich's violations of law in operating the Grieger automobile vitiate the permission given (see Veh. Code, §§ 12500, 14605, subd. (a)), since in our view it has been rightly held, pursuant to an owner's vicarious liability statute nearly identical to former section 402 (N.Y. Vehicle & Traffic Law, § 59; see 7 Stan.L.Rev. 507, 527-528), that the owner's liability attached even though the operator-permittee was under age and his operation of the vehicle without a license was a misdemeanor.[4] (*Devitt* v. *Continental Casualty Co.,* 245 App.Div. 115, 116-117 [281 N.Y.S. 336, 339-340], rev'd on other grounds, 269 N.Y. 474, 478-480 [199 N.E. 765]; see

[3]The owner of a vehicle has been held liable under former section 402 even though a subpermittee was operating the automobile when the accident occurred contrary to the owner's express instruction to the permittee that no person other than the permittee operate the automobile. (*Souza* v. *Corti, supra,* 22 Cal.2d 454, 460-461; *Herbert* v. *Cassinelli, supra,* 61 Cal.App.2d 661, 664-665, hear. den.)

[4]Recovery against the owner under former section 402 has been sustained in California where the operator-permittee was 15 years old and unlicensed (*Elkinton* v. *California State Auto. Assn., supra,* 173 Cal.App.2d 338, 343, 346, hear. den.), and where the offending vehicle being operated by the owner's permittee was not licensed. (*Flemmer* v. *Monckton,* 73 Cal.App.2d 271, 273-276 [166 P.2d 380]; *cf. Blank* v. *Coffin,* 20 Cal.2d 457, 462-463 [126 P.2d 868] [Fact that operator-permittee was accompanied by a friend in violation of rules of the company could not establish that he did not have permission to drive the car, since such a violation of rules is not relevant where the third person is injured.])

also *Taylor* v. *United States Casualty Co.*, 269 N.Y. 360, 366 [199 N.E. 620]; *Boyer* v. *Massachusetts Bonding & Ins. Co.*, 277 Mass. 359, 363-364 [178 N.E. 523].) ▮ Also, it is of course not necessary that the owner have had prior knowledge that the vehicle was to be operated by the individual with whose negligence the owner is sought to be charged. (*Burgess* v. *Cahill, supra,* 26 Cal.2d 320, 323-324; see *Scheff* v. *Roberts, supra,* 35 Cal.2d 10, 15; see also *Tuderios* v. *Hertz Drivurself Stations, Inc.*, 70 Cal.App.2d 192, 197-198 [160 P.2d 554].)

▮ Defendant also contends that since the plaintiff apparently did not observe the automobile until it was in the center of the street and moving, plaintiff was chargeable with contributory negligence as a matter of law. But "before it can be held as a matter of law that contributory negligence exists, the evidence must point unerringly to that conclusion." (*Balthrop* v. *Atchison T. & S. F. Ry. Co.*, 167 Cal.App.2d 437, 441 [334 P.2d 1041].) ▮ Furthermore, plaintiff was a minor, and "[i]n determining whether a minor has been guilty of contributory negligence as a matter of law, a much more lenient rule in favor of the minor is applied than applies to adults." (*Ross* v. *San Francisco Unified School Dist.*, 120 Cal.App.2d 185, 191 [260 P.2d 663]; *cf. Daun* v. *Truax*, 56 Cal.2d 647, 656-658 [16 Cal.Rptr. 351, 365 P.2d 407].)

▮ Plaintiff testified that his bicycle light was functioning, and it appears that he was reasonably alert to nearby danger as he was crossing that intersection. The issue of contributory negligence was thus properly submitted to the jury. (See *Andre* v. *Allynn*, 84 Cal.App.2d 347, 350-354 [190 P.2d 949]; *Blaylock* v. *Jensen*, 44 Cal.App.2d 850, 852-853 [113 P.2d 256]; see also Veh. Code, § 21804.)

▮ A final contention is that since plaintiff was not seriously incapacitated as a result of the accident and has been able to resume normal occupational duties, damages awarded were excessive and hence given under the influence of passion and prejudice. But considering the expense of the immediate medical treatments over a period of a month, possible future surgery, loss of wages for approximately six weeks, the inconvenience of a temporary limp, and the pain and suffering which yet persists when certain areas receive a moderate blow, it is manifest that it cannot be said that damages of $2,700 were so disproportionate to a reasonable compensation for the loss sustained as to indicate that passion and prejudice played a decisive part in the rendition of the

verdict. (*Seffert* v. *Los Angeles Transit Lines,* 56 Cal.2d 498, 506-508 [15 Cal.Rptr. 161, 364 P.2d 337].)

The judgment is affirmed.

Gibson, C. J., Traynor, J., Schauer, J., Peters, J., and Dooling, J., concurred.

Appellant's petition for a rehearing was denied January 9, 1962.