[Civ. No. 27453.    Second Dist., Div. Two.    April 28, 1964.]

FINANCIAL INDEMNITY COMPANY, Plaintiff and Respondent, v. THE HERTZ CORPORATION et al., Defendants and Appellants; JAMES H. WILEY et al., Defendants and Respondents.

*Retired judge of the superior court sitting pro tempore under assignment by the Chairman of the Judicial Council.

Moss, Lyon & Dunn, Charles B. Smith and Henry F. Walker for Defendants and Appellants.

Bolton, Groff & Dunne and John S. Bolton for Plaintiff and Respondent.

No appearance for Defendants and Respondents.

HERNDON, Acting P. J.—The Hertz Corporation, and its insurance carrier, Atlantic National Insurance Company, appeal from the judgment entered determining the rights of the several parties to this action for declaratory relief. It is uncontradicted that Francis E. Munson, a resident of New York, rented an automobile from appellant Hertz upon his arrival in Los Angeles on December 27, 1960. On January 5, 1961, he exchanged this car for a Tempest Pontiac, also rented by him from appellant Hertz.

The trial court made findings, which are not here challenged, and which are based upon substantial evidence, that in the usual course of its business Hertz rented this car to Munson ''for his general business and pleasure use, receiving their specified rate per mile regardless of who was driving the rented car. . . . That the said contract of rental between Hertz and Francis E. Munson contained a certain prohibition regarding the use of the rented automobile by others, except to a limited class of persons and under certain conditions, and that this restrictive clause was one of a considerable number, in fairly small type, in the full page printed rental contract that was executed; and not placed or positioned so that it was reasonably calculated to come to the attention of anyone renting an automobile. That Francis E. Munson did not read the contract and was unaware of the restrictive

clause which pertained to the use of the automobile by another person, ... that no employees or officers of Hertz advised Francis E. Munson or called his attention to the said restriction in the contract regarding loaning the automobile to another. That Hertz did not have a reasonable basis for believing that the said restriction contained in the referred to Hertz contract would be carried out; ..." In addition to eight "covenants and conditions" appearing above the renter's signature, the following language appeared thereunder:

"Renter participates in the benefits of an automobile public liability and property damage insurance policy subject to the terms, conditions, limitations and restrictions thereof and is bound by such terms, conditions, limitations and restrictions even though all of them are not outlined in this rental agreement. Said policy does not cover the renter or driver for injuries sustained by passengers or guests or any person while riding in or alighting from or getting into or on vehicle or liability imposed upon or assumed by the assured under any Workmen's Compensation Act, plan or law or any contract of whatever nature and requires that every accident must be immediately reported in writing to the Station from which the vehicle is rented and in any event within 24 hours after the accident and renter or driver must immediately deliver to the Station from which the vehicle is rented or to the insurance carrier as soon as practicable, every process, pleading or paper of any kind relating to any and all claims, suits and proceedings received by renter or driver. The renter and driver shall not in any manner aid or abet any claimant but shall cooperate fully with the Insurance Company in all matters connected with the investigation and defense of any claim or suit.

"The vehicle shall not be used, operated or driven: (a) In violation of any of the terms of the rental agreement. (b) By any person in violation of law as to age or by a driver or renter who has given a fictitious name or false age or address. (c) For any illegal purpose, in any race, speed test or contest, to propel or tow any vehicle or trailer or by any person while under the influence of intoxicants or narcotics. (d) By any person other than the renter who signed the rental agreement or, provided renter's permission be obtained, by a member of the renter's immediate family, the renter's employer, or a person driving the vehicle pursuant to said person's usual and customary employment by the renter, and in the course of said driver's regular and usual employment

for the renter, provided, however, that any such driver must be a qualified licensed driver.''

On the Thursday preceding Sunday, January 8, 1961, the date of the accident involved herein, Munson and his wife lunched with Joseph S. Vargo, with whom they had been friends for over 20 years. Munson testified that they mentioned to Vargo that they intended to go to Tucson, Arizona, the coming weekend and Vargo ''volunteered, because of the distance we were going to take on this trip, he volunteered me his car which would eliminate me from paying nine cents a mile for the rented car.'' That evening after work, Munson exchanged cars with Vargo, giving him the keys to the rented car and placing no restrictions on his use thereof.

Neither Munson nor Vargo knew that such exchange was in any way unauthorized under the terms of the rental contract. During their discussions Vargo disclosed to Munson the fact that he lived so near his place of employment that he did not need the car to get to work. However, the nature or extent of his actual use of the car was never discussed in any restrictive sense. The court found that Munson gave Vargo ''general possession'' of the vehicle with ''implied permission ... to drive the said 1961 Pontiac automobile, without restriction or limitation whatsoever.''

On Sunday, January 8, 1961, Vargo drove the rented car to church and then to the office of a dentist, which, as he understood, would be open on the weekend in order to obtain treatment for a chipped tooth before reporting to work on Monday. He was looking for the dentist's office when he became involved in an accident with a vehicle driven by James H. Wiley.

Appellant Atlantic National Insurance Company had issued a ''Driverless Car Liability Policy'' to Hertz as the ''named insured'' which provided, inter alia, that it would ''pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person [or because of injury to or destruction of property, including the loss of use thereof] caused by accident and arising out of hazards as defined.'' ''Hazards'' were defined so as to include ''[t]he ownership, maintenance or use of (a) any automobile of the private passenger or commercial type while rented without

chauffeurs to others from locations in the United States of America, its territories or possessions, or Canada, ...'' The policy also contained the following provision:

"DEFINITION OF INSURED. The unqualified word "insured" includes the named insured and also includes (1) any person, firm, association, partnership or corporation to whom an automobile has been rented without a chauffeur by the named insured (herein referred to as the 'renter'); (2) any employee of said renter (herein referred to as the 'driver'); (3) any employer of said renter; (4) any person, firm, association, partnership or corporation from whom an automobile has been rented or borrowed by the named insured for use in connection with operations as defined; (5) if the named insured is an individual, residents of the household of the named insured or if the named insured is a partnership or corporation, any partner or executive officer thereof and residents of the household of such partner or executive officer; (6) any partner or executive officer of the renter; (7) if qualified licensed operators, members of the immediate family of the renter or of any partner or executive officer of the renter; (8) any employee of the named insured while acting within the scope of his employment. This policy does not apply to any employee with respect to injury to or sickness, disease or death of another employee of the same employer injured in the course of such employment in an accident arising out of the maintenance or use of an automobile in the business of such employer.''

Respondent Financial Indemnity Company was the insurance carrier for James H. Wiley, the other party to the accident. Its policy contained a provision complying with section 11580.2 of the Insurance Code relating to uninsured motor vehicles. Following the accident, Wiley made his claim for damages against Hertz and Atlantic; it was rejected by them. He then made claim against Financial under the uninsured motor vehicle provision of his insurance contract. Financial thereafter filed the present action seeking a declaration of the rights and duties of the various parties.

The trial court made findings and conclusions to the effect that the rented vehicle was not an uninsured vehicle, and, more specifically, that Hertz was "liable as owner under the provisions of the owner's liability section of the California Vehicle Act, [Vehicle Code, section 17150, formerly section 402]'' and that Vargo, as permissive user of the car, was covered by Atlantic's policy as an additional insured, not-

withstanding that its contract did not expressly include such permissive user under its definitition of "insured."

The trial court concluded that insofar as the Hertz rental contract purported to limit its liability as owner in the event of an unauthorized use, it was of no effect because it was violative of the public policy of the State of California in this regard. The court further held that, insofar as Atlantic's contract of insurance purported to exclude coverage for certain classes of permissive users, it likewise was of no effect, being contrary to the public policy of this state.

Appellants challenge the validity of these legal conclusions and the correctness of the factual determination regarding Munson's authorization to Vargo to use the rented vehicle. The latter contention obviously is wholly without merit. ▪ Whether the requisite permission was given was a question of fact. (*Exchange Cas. & Surety Co.* v. *Scott,* 56 Cal.2d 613, 622 [15 Cal.Rptr. 897, 364 P.2d 833].) ▪ Not only is this court bound by any reasonable inference drawn by the trial court from the evidence, but in the instant case no other conclusion would appear to be rationally supported by the evidence. (Cf. *Peterson* v. *Grieger, Inc.,* 57 Cal.2d 43, 48, 52 [17 Cal.Rptr. 828, 367 P.2d 420]; *Exchange Cas. & Surety Co.* v. *Scott, supra,* 56 Cal.2d 613, 617-618.)

Neither Munson nor Vargo knew of any restriction on the use of the rented vehicle. When Munson exchanged cars with his friend Vargo, he knew he was taking for several days the only car available to Vargo, and when he delivered the keys of the rented car to him, he placed no restrictions whatsoever upon the use thereof. The testimony with respect to Vargo's voluntary statement regarding the proximity of his work necessarily would have no application to his use of the vehicle over the weekend. In addition, any "unspoken understanding" the parties may have had regarding the necessity for using the rented car doubtless had reference to the fact that Vargo did not anticipate many miles of travel for which Munson would have to pay, rather than constituting any sort of an agreement that the car was not to be used at all.

▪ Turning now to appellants' contentions regarding the legal conclusions reached by the trial court, we hold that these arguments also are invalid. Even if the rental contract of Hertz, and the conduct of its employees in relation thereto, had been sufficient to justify their reliance upon the supposition that restrictions therein regarding use of the car by others would be complied with, the law is clear that such

restrictions would not serve to relieve it of liability under California's owner's liability law. (Veh. Code, § 17150, formerly § 402.) As noted by our Supreme Court in *Peterson* v. *Grieger, Inc. supra,* 57 Cal.2d 43, in footnotes 3 and 4 (p. 55) :

"3. The owner of a vehicle has been held liable under former section 402 even though a subpermittee was operating the automobile when the accident occurred contrary to the owner's express instruction to the permittee that no person other than the permittee operate the automobile. (*Souza* v. *Corti, supra,* 22 Cal.2d 454, 460-461 [139 P.2d 645, 147 A.L.R. 861] ; *Herbert* v. *Cassinelli, supra,* 61 Cal.App.2d 661, 664-665, hear. den. [143 P.2d 752].)"

"4. Recovery against the owner under former section 402 has been sustained in California where the operator-permittee was 15 years old and unlicensed (*Elkinton* v. *California State Auto. Assn., supra,* 173 Cal.App.2d 338, 343, 346, hear.den. [343 P.2d 396]), and where the offending vehicle being operated by the owner's permittee was not licensed. (*Flemmer* v. *Monckton,* 73 Cal.App.2d 271, 273-276 [166 P.2d 380] ; cf. *Blank* v. *Coffin,* 20 Cal.2d 457, 462-463 [126 P.2d 868] [Fact that operator-permittee was accompanied by a friend in violation of rules of the company could not establish that he did not have permission to drive the car, since such a violation of rules is not relevant where the third person is injured.])"

Similarly, the rule first enunciated in *Wildman* v. *Government Employees' Ins. Co.,* 48 Cal.2d 31, 39 [307 P.2d 459] has been consistently repeated and followed in subsequent appellate decisions: "We are of the opinion that for an insurer to issue a policy of insurance which does not cover an accident which occurs when a person, other than the insured, is driving with the permission and consent of the insured is a violation of the public policy of this state as set forth in sections 402 [present § 17150] and 415 [present § 16451] of the Vehicle Code."

In *Interinsurance Exchange* v. *Ohio Cas. Ins. Co.,* 58 Cal.2d 142, 154 [23 Cal.Rptr. 592, 373 P.2d 640], it was held that: "The pattern is clearly discernible: a desire on the part of the judiciary and the Legislature to not only prevent the astronomical accident toll in this state, but to also provide compensation for those injured through no fault of their own. ... We hold that the rule of public policy as announced in *Wildman* v. *Government Employees' Ins. Co., supra,* 48

Cal.2d 31 was not overruled or changed by the 1957 amendment to section 415 of the Vehicle Code.''

■ Therefore, by reason of the supported factual determination that both Hertz and Munson impliedly authorized the use of the car by a third person, the trial court correctly concluded that Vargo, as permissive user, was an additional assured and covered by Atlantic's policy notwithstanding that such policy did not expressly provide for any permissive users. That is, Atlantic's policy contained no true omnibus clause and no reference is made therein to persons using the car with the permission of any of the persons included within the definition of ''insured'' or even with the permission of the named insured, Hertz.

■ However, under the rule enunciated in the *Wildman* case, such coverage is made a part of every insurance policy, whether provided for or not and ''Any provision in a policy which purported to exclude certain classes of permissive users from coverage was declared to be contrary to this public policy and, therefore, void.'' (*Interinsurance Exchange* v. *Ohio Cas. Ins. Co., supra*, 58 Cal.2d 142, 150, and cases cited.)

Seeking to avoid this seemingly inevitable conclusion, appellants rely entirely upon the decision in *Norris* v. *Pacific Indem. Co.*, 39 Cal.2d 420 [247 P.2d 1]. In the *Norris* case, a father had permitted his son to use his car, but expressly directed the son not to allow any other person, except a member of the family, or the chauffeur, to use it. In violation of this instruction, the son allowed a friend to use it and the latter became involved in an accident. The court held that while such restriction would not relieve the father of his statutory liability as owner, the friend would not be covered under the omnibus clause of the father's insurance policy.

While this decision has not been expressly overruled by our Supreme Court, the extent of its application has been substantially limited by the law declared in the *Wildman* case to the effect that the provisions of former section 415 of the Vehicle Code were an expression of the public policy of this state and, as such, must be read into every contract of insurance issued herein. Justice Carter, who had dissented in the *Norris* case, authored the opinion of the court in *Wildman*. This later decision was at pains to note that (p. 38) ''No case construing section 415 of the Vehicle Code as it relates to the circumstances here present has been cited to us, nor has independent research revealed one.*'' A footnote to

this sentence expressly stated: "The question here presented was not determined by this court in *Norris* v. *Pacific Indem. Co.,* 39 Cal.2d 420 [247 P.2d 1]; *Souza* v. *Corti,* 22 Cal.2d 454 [139 P.2d 645, 147 A.L.R. 861]."

Moreover, in the *Wildman* case, the policy under consideration provided in its definition of the insured that "the unqualified word 'insured' includes the named insured, the individual named below, and any member of the insured's immediate family

## NO EXCEPTIONS

while using the automobile or legally responsible for the use thereof, provided the actual use of the automobile is with the permission of the named insured." In determining the question as to the application of the words "No Exceptions", the court stated (p. 35):

"It appears that the 'no exceptions' applies to the named insured and members of his immediate family *while any of them* were using the automobile or *had consented and permitted its use by someone else.* The phrase referring to use with consent and permission would, otherwise, have no effect whatsoever, inasmuch as Eusebio, Cecilia and *members of their immediate family were directly covered by the policy in the first part of paragraph 1.*" (Italics added.)

Applying this determination to the instant case, it is manifest that all the parties named in the Atlantic policy's definition of the insured are "directly covered by the policy" and "any of them" could have "consented and permitted [the vehicle's] use by someone else." Under such conditions, the permissive user would become an additional insured covered by the policy by the operation of the rule of public policy even though no express provision had been made for such extended coverage therein. It is thereafter immaterial whether the permissive user became an insured through interpretation of a policy definition or by operation of law; he is protected to the full limits of the policy. (*Globe Indem. Co.* v. *Universal Underwriters Ins. Co.,* 201 Cal.App. 2d 9, 18 [20 Cal.Rptr. 73].)

We are not here called upon, however, to decide whether in the presence of a factual situation identical to that presented in the *Norris* case, a similar result would be dictated today. We have here many important differences which readily distinguish the *Norris* case from the instant case. In *Norris,* unlike *Wildman* and our present case, the policy

included only the named insured within its definition of the insured, and he was the only one authorized to give permission for the use of the vehicle. (*Norris* v. *Pacific Indem. Co.*, *supra*, 39 Cal.2d 420, 423.)

In addition, the trial court in *Norris* found, upon evidence without substantial conflict, that the father had expressly prohibited the use of the car by others than his son and that the son and his subpermittee were well aware of this fact.

■ In the instant case, the trial court found that ''Hertz did not have a reasonable basis for believing that the said restriction contained in the referred to Hertz contract would be carried out; and since Hertz had no such reasonable expectations, Hertz is deemed to have given implied permission to the use of the subject automobile without the said restriction. ...'' ■ Further, neither Munson nor Vargo was aware of such restriction. Under such circumstances, Hertz must be held to have anticipated such use by others than the renter with his permission, and, hence, impliedly consented thereto.

■ Finally, unlike the usual case involving a family car where the named insured is generally the party who makes the primary and predominant use of the vehicle, in the instant case it is the innumerable but unknown number of future renters who will use and operate the vehicle and the owner, Hertz, whose use thereof will be secondary and casual. Since Hertz is engaged in the business of placing its cars in the hands of others for a profit determined solely by the number of miles driven, without regard to the identity of the actual operators while they are in use, it should not be allowed to avoid providing the coverage required by the public policy of this state by the simple expedient of inserting an obscure clause in its lease agreement prohibiting certain types of operation.

For example, no one would argue today that Hertz or Atlantic could avoid providing the insurance coverage required by law if the vehicle were operated by a renter ''in violation of law as to age or by a driver or renter who has given a fictitious name or false age or address'' as is also provided in the lease agreement. The public policy relating to an owner's liability and coverage for permissive users would be wholly vitiated by such a ruling.

'' [I]t has been stated that where the owner 'gave specific instructions as to the manner of operation, the speed and care in driving, etc., it would not be reasonable to hold that

the use was without permission if any of these detailed instructions were violated, for ... the liability of the owner [under § 402] could in almost every case be defeated by some showing of violation of authority.' [Citations.]'' (*Peterson* v. *Grieger, Inc., supra,* 57 Cal.2d 43, 55.)

The judgment is affirmed.

Roth, J., and Kincaid, J. pro tem.,* concurred.

A petition for a rehearing was denied May 21, 1964.

---

*Retired judge of the superior court sitting pro tempore under assignment by the Chairman of the Judicial Council.