**Paul BAKER; Heidi Baker, Plaintiffs–Appellants,**

v.

**LIBERTY MUTUAL INSURANCE COMPANY, Defendant–Appellee.**

No. 97–15781.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 12, 1998.

Decided May 12, 1998.

Dennis John Woodruff, Ellen Lake, Oakland, CA, for plaintiffs-appellants.

Lisa M. Kralik, Ronald J. Skocypec, Kern and Wooley LLP, Los Angeles, CA, for defendant-appellee.

Before: SNEED, WOOD,[*] and O'SCANNLAIN, Circuit Judges.

## OPINION

SNEED, Circuit Judge:

Paul and Heidi Baker, whose son died when the car in which he was a passenger hit a tree, appeal the district court's summary judgment in favor of Liberty Mutual Insurance, which had issued an insurance policy on the car. The car was driven and the accident caused by 15–year–old Yasha Lowe, a friend of the daughter of John Medeiros, who rented the car from Shasta Ford–Mercury. The Bakers argue that, under California law, Yasha Lowe was a "permissive user" of the car, and as a result is covered under the Liberty Mutual policy. They also argue that irrespective of whether Yasha Lowe was covered under the policy, Liberty Mutual breached

[*] Honorable Harlington Wood, Jr., Senior United States Circuit Judge for the Seventh Circuit, sitting by designation.

its good faith duty to defend the girl in a wrongful death action filed by the Bakers.

We hold that Shasta Ford–Mercury did not grant implied permission for Yasha Lowe to use the car, and that therefore she can not be considered a "permissive user." Moreover, Liberty Mutual did not violate any duty to defend. Accordingly, we affirm the district court's grant of summary judgment.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

On August 30, 1995, Shasta Ford–Mercury ("Shasta"), a car dealer and repair shop in Dunsmuir, California, loaned a 1994 Mercury Topaz to John Medeiros, for use while his personal car was undergoing repairs. The car was insured by a liability policy issued by appellee Liberty Mutual Insurance Company ("Liberty Mutual").

Medeiros signed a single sheet, two-sided rental agreement provided by Shasta. On "page 2," the side he signed, the contract stated that "only the below named persons are authorized as additional drivers. If none, print 'none' across this section and have signed by customer." In that space, a Shasta employee wrote John Medeiros's name, although Medeiros did not actually sign his name under the additional drivers heading.

On the other side of the contract, labeled "page 1," there is a lengthy list of restrictions and conditions. The first paragraph stipulates that

> [i]n no event shall the vehicle be used, operated or driven by any person other than the Customer or a qualified licensed driver at least 21 years of age who has Customer's advance permission and is one of the following: a person whose name(s) appear on page 2 hereof, the Customer's spouse, the Customer's employer or co-worker if they are engaged in business activity with the customer.

The following paragraph also states, under the heading "Prohibited use," that "[t]he vehicle shall not be used, operated or driven by anyone ... who is other than an authorized driver."

Medeiros asserts that the Shasta employee who gave him the Topaz told him only that he had to sign "some kind of paper ... for their liability so they were covered as far as their insurance goes." Medeiros says that the employee told him he did not need to read the contract, and was in a hurry to get him "out the door." He claims he did not read the contract, and was not given a copy. Liberty Mutual does not dispute that the Shasta employee failed to specifically point out the no-additional-driver restrictions, and did not write "none" in the appropriate location or obtain Medeiros's initials or signature under the additional driver heading.

On September 9, 1995, while Medeiros was out of town, his daughter Adrienne Medeiros allowed her friend, 15–year–old Yasha Lowe, to drive the Topaz. Yasha drove the car off the road and into a tree, killing the back seat passenger, 14–year–old Evan Baker, the son of the appellant in the present case ("the Bakers"). Both Adrienne Medeiros, who was also in the vehicle, and Yasha Lowe were under the legal driving age and thus neither had a driver's license.

In January 1996, the Bakers filed a wrongful death action against Yasha Lowe. Lowe, claiming she was a permissive user of the Topaz and thus covered under the Liberty Mutual policy, tendered defense of the action to the insurance company. Liberty Mutual rejected the notion that Lowe was a permissive user and refused to defend. Subsequently, a default judgment in excess of $500,000 was entered against Lowe. She then assigned to the Bakers her claims against Liberty Mutual, and the Bakers brought an action against the insurer in Sacramento Superior Court, alleging breach of the duty to defend, breach of implied covenant of good faith and fair dealing, and breach of duty to pay a judgment.

Liberty Mutual removed the case to federal court as a diversity suit and moved for summary judgment, which the district court granted. The court held that Medeiros was bound by the terms of the contract even if he had not read it. The court rejected the significance of the failure to write in "none" under the additional driver heading, noting that even if the contract could be read to permit additional drivers, the prohibition on page 1 clearly bars an interpretation of the

document which would suggest that the additional driver could be someone under 21 years of age without a driver's license. As a result, Shasta did not give Medeiros implied permission to permit either his daughter or Yasha Lowe to drive the Topaz, and therefore neither could possibly be a permissive user covered by Liberty Mutual. This timely appeal ensued.

## II.

### STANDARD OF REVIEW

■■ A grant of summary judgment is reviewed de novo. *Forsyth v. Humana, Inc.,* 114 F.3d 1467, 1474 (9th Cir.1997). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Id.* This court may affirm the summary judgment dismissal on any basis supported by the record. *Sicor Ltd. v. Cetus Corp.,* 51 F.3d 848, 860 (9th Cir.1995), *cert. denied,* 516 U.S. 861, 116 S.Ct. 170, 133 L.Ed.2d 111 (1995).

We have jurisdiction to review this diversity action under 28 U.S.C. § 1291.

## III.

### DISCUSSION

A. *The Standard for Determining Permissive Use*

■ The district court correctly applied California law to the facts of this case. Yasha Lowe can only be considered a permissive user (and therefore covered under the Liberty Mutual policy) of the automobile loaned to John Medeiros by Shasta if she was expressly or impliedly granted permission to drive the car by both (1) the owner, Shasta, and (2) the initial permittee, Medeiros. *Sandoval v. Mercury Ins. Group,* 229 Cal.App.3d 1, 8–9, 278 Cal.Rptr. 533 (1991). Yasha Lowe's use of the vehicle must also have been "within the scope" of the permission given by both Shasta and Medeiros. Cal. Insurance Code § 11580.1(b)(4); *Sandoval,* 229 Cal.App.3d at 9, 278 Cal.Rptr. 533.

1. *Permission by Shasta*

■ It is undisputed that Shasta did not grant explicit permission to Lowe, a 15-year-

old friend of Medeiros's daughter. Therefore, in determining whether implied permission was granted, this court must examine the "conduct and expectations of the owner," Shasta. *Sandoval,* 229 Cal.App.3d at 9, 278 Cal.Rptr. 533. "[P]ermission is implied where the circumstances permit a finding [that] the third party's use was or should have been within the contemplation of the owner." *Id.*

Ordinarily, the clear contractual prohibitions on additional and underage drivers might be dispositive of the question of Shasta's conduct and expectations. However, the Bakers argue that the totality of the circumstances surrounding the contract between Shasta and John Medeiros establish that Shasta had no reasonable basis for believing that the contractual restriction prohibiting the use of the car by other drivers would be honored. They claim that because the Shasta employee did not explicitly point out the no additional drivers provision, Shasta gave implied permission for Yasha Lowe to drive the Topaz. In support of this proposition, the Bakers cite *Financial Indemnity Co. v. Hertz Corp.,* 226 Cal.App.2d 689, 38 Cal.Rptr. 249 (1964).

In *Financial Indemnity,* the rental agreement contained a provision, similar to that in the present case, which barred other drivers. The restriction was in small type, the permittee did not read the contract, a Hertz employee failed to mention the term, and it was proven that the permittee was unaware of the restriction. *Financial Indemnity,* 226 Cal.App.2d at 691–92, 38 Cal.Rptr. 249. The permittee loaned the car to another driver, and an accident ensued. *Id.* The court held that when combined with California's well-established public policy of liberally construing the definition of "permissive user"—in order to bring under the shield of insurance those innocents, like Evan Baker, who might be injured in auto accidents—these circumstances indicated that Hertz had no reasonable expectation that the no-additional-driver restriction would be followed. As a result, the court ruled that *Hertz* "must be held to have anticipated such use by others than the renter with his permission and, hence, impliedly consented thereto." *Id.* at 699, 38 Cal. Rptr. 249.

This court has strongly criticized *Financial Indemnity*. *See Travelers Insurance Co. v. Budget Rent–A–Car Sys.*, 901 F.2d 765, 768–772 (9th Cir.1990). As the *Travelers* court observed, "[t]he idea that a party may not rely on a contract term because the other side can be expected to violate it cuts at the very heart of contract law." *Id.* at 768. However, this criticism was levied in *Travelers* in the context of rejecting the plaintiff's argument that the *Financial Indemnity* approach should be read into Hawaii law. *Id.* at 766. *Travelers* is therefore not dispositive of this case, in which we are bound to apply California law. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

Despite the dubious wisdom of *Financial Indemnity*, and the likelihood that it has been overtaken by an amendment to the California Insurance Code (discussed *infra*), the case has not been overruled and may remain good law in California—at least within the context of its narrow factual situation. *See Marquez v. Enterprise Rent–A–Car*, 53 Cal.App.4th 319, 323, 61 Cal.Rptr.2d 557 (1997); *Sandoval*, 229 Cal.App.3d at 8–9, 278 Cal.Rptr. 533 (discussing while distinguishing *Financial Indemnity*). As a result, although we find the terms of the contract in this case to be clear, we express no opinion on whether Shasta's conduct—particularly its failure to explicitly point out to John Medeiros the "no additional driver" terms of the rental agreement—could nevertheless lead to a finding that legal third party adult drivers, operating the vehicle for a legal purpose of the type reasonably contemplated by Shasta, are permissive users under California law.

However, those are not the facts of this case. Here John Medeiros did *not* loan the car to a legal driver for a legal purpose. As a result, regardless of its continued viability, it is clear that *Financial Indemnity* is not controlling on this case. The inquiry, then, must return to the question of Shasta's "conduct and expectations."

In order to find that Yasha Lowe is a permissive user, we would be forced to conclude that Shasta contemplated, or should reasonably have expected, that the car would be loaned to an underage driver, who would be breaking the law by the very act of driving the vehicle. *See* Cal. Vehicle Code § 12512 (establishing age limit for issuance of drivers licenses) (repealed 1997); § 14607 (prohibiting a person from granting a child under 18 permission to drive without a license). In addition, this court would have to find that Shasta did in fact or should have foreseen that not just Medeiros' underage daughter, but one more person removed in the "chain" of users—the daughter's underage friend, Yasha Lowe—would be driving the car illegally. Shasta did not so contemplate, and it would be unreasonable to expect that it should have done so. Simply because Shasta may be liable under California law for the actions of *some* third party drivers, it does not follow that Shasta and its insurer are liable for the actions of *anyone* who may drive the car for any purpose. Fundamental contract doctrine as well as the relevant California statute and case law all support this conclusion.

Whether Medeiros read the provisions concerning additional and underage drivers or not, he must be presumed to have known the law and intended to be bound by an objectively reasonable understanding of the terms of the contract, and Shasta Ford was entitled to so assume. Indeed, a *sine qua non* of contract doctrine is a shared expectation that the parties will execute the contract in accord with the law. *See* John D. Calamari & Joseph M. Perillo, Contracts 889 (3rd ed.1987) (noting that parties may not generally bargain for or agree to an illegal term and that "[a]s a general rule an illegal bargain is unenforceable and often void.")[1]

Moreover, it is difficult to see how the commission of an illegal act by a driver not allowed to operate *any* motor vehicle can lie "within the scope" of permission granted by Shasta to the original permittee, Medeiros. While the "policy underlying [Insurance Code] section 11580.1 has long been identi-

---

1. The Bakers argue that Medeiros was not even aware that he was signing a contract or committing himself to a contractual arrangement. But this claim, even if true, proves little. Medeiros could not have reasonably assumed, whatever he believed to be the nature of the document he signed, that it included permission to loan the car to an underage, non-family member for the purpose of an illegal joyride.

fied as that of providing as much protection to the public on the highways of California as is possible," and has thus been interpreted to include a liberal definition of "permissive user," it must also be considered in light of the "parameters set by the owner of the vehicle." *Hartford Accident and Indem. Co. v. Abdullah,* 94 Cal.App.3d 81, 88–89, 156 Cal.Rptr. 254 (1979).

The importance of considering these parameters and the owner's reasonable expectations was codified in 1970 (several years after *Financial Indemnity* ), when the California Legislature amended the Insurance Code. *Sandoval,* 229 Cal.App.3d at 9, 278 Cal.Rptr. 533 (noting that the amended statute "underscores the importance of the owner's expectations"). Until that time, the code had classified third party users as permissive, and therefore covered under the owner's insurance, "even if [the third party's] use or operation of the vehicle were not within the scope of the permission granted." *Jordan v. Consolidated Mutual Ins. Co.,* 59 Cal.App.3d 26, 41, 130 Cal.Rptr. 446 (1976).

The Bakers claim that the "within the scope" addition to the law simply has no impact in cases like *Financial Indemnity.* That is, the Bakers ask that this court ignore the statutory language in cases where the owner fails to discuss explicitly a contract provision and treat that omission by the owner as consent, with the result that the insurer is liable for the actions of any and all drivers regardless of the scope of the owner's permission. This, however, was precisely the state of affairs at the time the California Legislature added the "within the scope" language. *Id.* The inclusion of this phrase self-evidently "bespeaks a legislative intent to change the meaning of the statute as it was previously worded." *Id.*

Peterson v. Grieger, Inc., 57 Cal.2d 43, 17 Cal.Rptr. 828, 367 P.2d 420 (Cal.1961), cited by appellants for the proposition that underage drivers must be considered permissive users, was decided prior to the 1970 addition

of the "within the scope" language to the California Insurance Code. As a result, *Peterson* is not determinative. Although California courts have provided little guidance on what is meant by "within the scope of permission," *Abdullah,* 94 Cal.App.3d at 88, 156 Cal.Rptr. 254, they clearly have not held that the phrase has no effect or that it requires illegal behavior to be implicitly read into contractual terms.[2]

It is clear that Shasta did not and could not reasonably anticipate either the driver, Yasha Lowe, or the use to which the car would be put. Summary judgment was appropriate. California law does not stand for the proposition that an owner engaged in renting or loaning a vehicle must be presumed to expect the illegal use by an illegal driver of the car merely because the owner failed to explicitly highlight a "no additional drivers" clause in the contract.

### 2. *Permission by Medeiros*

Because we find that the district court correctly held that Shasta did not grant implied permission to Yasha Lowe, we need not reach the question of whether Medeiros gave Lowe permission. The "chain" of permission is severed by the failure of the first link; the lack of permission from Shasta.

### B. *Duty to Defend*

Nevertheless, the Bakers argue that even if Yasha Lowe was not covered by the Liberty Mutual policy, the insurer breached its duty to defend and the covenant of good faith and fair dealing because there was a potential for coverage at the time it refused to defend her.

However, California law is clear that if the "only potential for liability turns on [the] resolution of a legal question, there is no duty to defend." *Waller v. Truck Insurance Exchange, Inc.,* 11 Cal.4th 1, 25–26, 44 Cal.Rptr.2d 370, 900 P.2d 619 (1995). In the

---

**2.** The Bakers also cite *Elkinton v. California State Automobile Association,* 173 Cal.App.2d 338, 343 P.2d 396 (1959), in which an underage driver was deemed a permissive user of her mother's Cadillac. However, *Elkinton* dealt with the definition of "permission" under California's Vehicle Code, not the Insurance Code. *Id.* at 345, 343

P.2d 396. California courts have held that the terms in the two statutes are construed differently. *See Jordan,* 59 Cal.App.3d at 40, 130 Cal. Rptr. 446 (holding that the definitions of " 'permission' within the two contexts" are not controlling on each other).

present case, coverage could only apply to Yasha Lowe if, as a matter of law, we were to extend the holding of *Financial Indemnity* to mandate the coverage of underage drivers operating rental vehicles illegally. Liberty Mutual had no good faith duty to defend.

Nor does the failure of the California courts to clearly define the "within the scope of permission" language in Cal. Insurance Code § 11580.1(b)(4) require Liberty Mutual to defend or be in breach of its good faith duties. The law "does not hold ... that the insurer must always defend a third party lawsuit absent a published judicial opinion definitively construing the specific policy provision on which the insurer relies, or ... until the extent of the policy coverage is legally certain to deny the defense." *Id.* at 25, 44 Cal.Rptr.2d at 382–83, 900 P.2d at 631–32 (internal quotations omitted).

## IV.

### CONCLUSION

Regardless of whether all the terms of the contract were clear, or of whether Medeiros read and was aware of them, it is evident that Shasta did not impliedly give permission for the Topaz to be used by an illegal driver. As a result, there is no set of facts under which the Bakers could prove Yasha Lowe was a permissive user and thus covered by the Liberty Mutual policy. So too, there was no duty to defend or breach of good faith under California law because the only potential for liability turned on a purely legal question. In the absence of any genuine issues of material fact as to these matters, summary judgment was appropriate.

**AFFIRMED.**